**FENNER & BEANE et al. v. LINCOLN.**

No. 1757.

Court of Civil Appeals of Texas. Waco.
Nov. 12, 1936.

On Rehearing Jan. 7, 1937.

Further Rehearing Denied Feb. 4, 1937.

Smithdeal, Shook, Spence & Boyer, of Dallas, for appellants.

McClellan, Lincoln & Williams, of Waco, and W. W. Mason, of Mexia, for appellee.

ALEXANDER, Justice.

This appeal involves the ruling of the trial court on a plea of privilege. Mrs. Florence R. Lincoln brought the suit in McLennan county against Fenner & Beane, a copartnership composed of numerous parties, with offices in Dallas county, and E. H. Hulsey, who resides in Dallas county, and M. S. Mullens, Jr., who resides in McLennan county. She alleged in substance that the firm of Fenner & Beane was engaged in the brokerage business in Dallas county, with M. S. Mullens, Jr., as its agent in McLennan county; that shortly prior to January 10, 1934, she delivered to and ordered sold by M. S. Mullens, Jr., 10 shares of General Foods at the market price, for which she received a credit of $345, and that on January 10, 1934, she bought at the office of the firm in Dallas, through M. S. Mullens, Sr., its manager, 10 shares of Commonwealth Edison for the sum of $423.65, and at the request of the said M. S. Mullens, Sr., she paid the difference of $78.65 to M. S. Mullens, Jr., at Waco, by virtue of which she became entitled to the possession of the 10 shares of Commonwealth Edison, but that the defendants refused to deliver the same; that on February 3, 1934, she delivered to the said copartnership's agent, M. S. Mullens, Jr., at Waco 35 shares of Packard stock for sale at the market price, and that between February 6 and March 22, 1934, she instructed said agent at Waco to buy for her account 25 shares of White Sewing Machine stock, 100 shares of Mid-West Utilities, and 5 shares of Packard Motors, and that said agent agreed to buy said stock for her; that subsequent to said date she demanded an accounting of the copartnership and requested delivery of the stock ordered purchased for her account, but that said defendants had refused to deliver said stock and had refused to account to her for the proceeds of the stock sold for her account. She sued for the damages. The said E. H. Hulsey was sued both individually and as a member of said firm. He was the only member of the firm upon whom service of citation was had. Said firm and the defendant Hulsey filed pleas of privilege to have the case moved to Dallas county. The trial court, after hearing the evidence, entered judgment overruling the pleas of privilege. The defendants appealed.

Appellee contends that the suit against Fenner & Beane is properly maintainable in McLennan county because M. S. Mullens, Jr., one of the defendants who resided in McLennan county, was the agent of said firm, and because he had converted to his own use in McLennan county the stock purchased for and belonging to the plaintiff. The first material question to be determined is whether or not M. S. Mullens, Jr., was an agent of the defendant Fenner & Beane. In 1930 Fenner & Beane was a copartnership, composed of numerous parties, the names of whom it is not necessary to mention at this time. On November 1, 1933, the partnership was reorganized under the firm name of Fenner, Beane & Ungerleider, some of the new members being different from those in the old firm. It was again reorganized in 1934, at which time the new firm of Fenner & Beane, the defendant herein, came into existence. Some of the members of the present firm are different from those of either of the old firms. In 1930 the old firm of Fenner & Beane maintained a branch office in the Hilton Hotel in Waco in charge of M. S. Mullens, Sr., as manager, and M. S. Mullens, Jr., as assistant manager. On October 31, 1930, the firm decided to close the Waco office and move M. S. Mullens, Sr., to the Dallas office. M. S. Mullens, Jr., was left in charge of the Waco office to wind up the business. There is evidence that at that time Mullens, Sr., told Mrs. Lincoln and other customers that his son, M. S. Mullens, Jr., would remain in charge of the Waco office and that said customers could continue to do business with Fenner & Beane through M. S. Mullens, Jr. The Waco

office was later closed, either in December, 1930, or January, 1931, and the connections of M. S. Mullens, Jr., with the firm ceased. Shortly thereafter, Mullens, Jr., moved to the Provident building in Waco and opened a private office, where he was engaged in business for himself as stockbroker, under the name of M. S. Mullens, Jr., Investment Broker. He remained in that office until about January 1, 1934, at which time he moved to the Professional building in Waco and opened an office under the trade-name of Waco Securities Company. Continuously, after closing the firm's branch office in Waco and after opening an office of his own, he bought and sold stock for his customers. He was not a member of the stock exchange, and consequently had to place his orders through some agency that had access to the floor of the exchange. He placed most of his orders with Fenner & Beane in his own name, and Fenner & Beane executed them in his name, but sometimes, at his request, the firm would mail stock purchased for him directly to his customer. When he placed small orders with Fenner & Beane, in which the firm's commission was $5 or less, the firm split its commission with him. Otherwise, he had to charge and collect his commission from his customer. After Fenner & Beane closed the branch office in Waco, they maintained a leased wire between Waco and Dallas so their customers in Waco could have their local telephones connected therewith and could talk with the Dallas office without charge. The same connection could be had from the office of M. S. Mullens, Jr.

During the time that M. S. Mullens, Jr., maintained an office in the Provident building, Mrs. Lincoln made numerous purchases and sales of stock through him, and as a part of each transaction she received a confirmation of the purchase or sale from him in the trade-name under which he was doing business and not in the name of Fenner & Beane. In January, 1934, Fenner & Beane attempted to install in the office of the Waco Securities Company (owned and operated by M. S. Mullens, Jr.) a teletype machine on the same circuit with the Dallas office, but the machine was never put in operation, due to the fact that the stock exchange never granted its permission for the installation. Such machines are contraptions for the giving of market quotations and can be used for placing orders for stock. They are frequently installed by large brokerage concerns in the offices of their customers or local brokers. Shortly prior to January 10, 1934, Mrs. Lincoln delivered to Mullens, Jr., at Waco, 10 shares of General Foods and instructed him to sell it for her account at the market price. In a day or two thereafter she went to Dallas and requested Fenner & Beane, through M. S. Mullens, Sr., to buy for her 10 shares of Commonwealth Edison at the market price. Later in the day she telephoned Mullens, Sr., and was informed that he had bought the stock for the sum of $423.65. She then informed him that before leaving Waco she had delivered to M. S. Mullens, Jr., the 10 shares of General Foods for sale and that she desired to use the money due her from that sale to apply on the purchase price of the Commonwealth Edison just bought by her, and inquired of Mullens, Sr., how she should arrange for paying the difference. Upon being informed by her that she was then preparing to return to Waco immediately, M. S. Mullens, Sr., said to her: "It will be all right if you pay at the Waco office." She later returned to Waco and paid Mullens, Jr., the difference between what her General Foods stock had brought and the price that she had contracted to pay for Commonwealth Edison. She has never received the Commonwealth Edison stock. On February 3, 1934, she delivered to M. S. Mullens, Jr., 35 shares of Packard stock for sale at the market price, the proceeds to be credited to her account, and between February 6, 1934, and March 22, 1934, she requested the said Mullens, Jr., to buy for her account 25 shares of White Sewing Machine stock, 100 shares of Mid-West Utilities, and 5 shares of Packard Motor stock, all of said stock to be purchased at the market price and charged to her account. She never received any of said stock, nor did she receive the proceeds of the sale of the Packard stock. At the time each of said transactions was had, Mullens, Jr., delivered to Mrs. Lincoln confirmation in the name of Waco Securities Company. It is Mrs. Lincoln's contention that in said transactions she was doing business with the said Mullens, Jr., as the agent of Fenner & Beane.

All of the parties connected with Fenner & Beane, as well as M. S. Mul-

lens, Jr., testified that the said M. S. Mullens, Jr., was never appointed agent for Fenner & Beane after he closed the old office of the firm in the Hilton Hotel in the early part of 1931, and that he had no actual authority thereafter to act for said firm. We find no evidence to the contrary. Therefore, if he had any authority to bind Fenner & Beane as the firm's agent, it was by virtue of the doctrine of estoppel growing out of the apparent agency created as the result of the firm's holding him out as such. The fact that he had previously represented the old firm of Fenner & Beane at the time said firm maintained an office in Waco in 1930, and the early part of 1931, can have no weight in the matter here under consideration, because that relationship was with the old firm and had terminated approximately three years prior to the transaction here under consideration. The same thing is true concerning the representations made by M. S. Mullens, Sr., to Mrs. Lincoln in 1930, to the effect that M. S. Mullens, Jr., would continue to represent the firm at Waco. At the time these statements were made they were true, but that relationship was discontinued when the firm closed its Waco office in the early part of 1931. Thereafter, Mullens, Jr., opened a new office in his own name. Mrs. Lincoln knew that the old office had been closed. She had transacted business with Mullens, Jr., at his new office and had always received confirmations of her sales or purchases in the name of M. S. Mullens, Jr., and not in the name of Fenner & Beane. The fact that Fenner & Beane attempted to maintain a teletype machine in M. S. Mullens, Jr.'s, office, supplied him, as well as other Waco customers, with free telephone connections with the firm's Dallas office, and executed his orders for him on the floor of the exchange did not amount to such holding out of apparent agency as to estop the firm from denying that he was its general agent for the sale and purchase of stock. Such relationship is usual and customary between concerns that have membership in stock exchanges and their large customers or local brokers, and proof of their existence is not sufficient to justify the inference that such local brokers are agents of the exchange members. Krstovic v. Van Buren, 235 N.Y. 96, 138 N.E. 749; Holman v. Goslin, 103 App.Div. 606, 93 N.Y.S. 126; Cannel Coal Co. v. Luna (Tex.Civ.App.) 144 S. W. 721.

■ There is evidence that on other occasions M. S. Mullens, Sr., made statements to other customers calculated to induce them to believe that M. S. Mullens, Jr., was the authorized agent of Fenner & Beane, but it does not appear that information concerning these statements was communicated to Mrs. Lincoln, and, in the absence of knowledge thereof, she could not invoke the doctrine of estoppel in reliance thereon. 2 Tex.Jur. 424; 2 C. J.S., Agency, p. 1062; 2 Amer.Jur. p. 88. The only other incident necessary to be considered in connection with the allegations of apparent agency growing out of the plea of estoppel is the fact that, when Mrs. Lincoln purchased the Commonwealth Edison stock from Fenner & Beane in Dallas in January, 1934, M. S. Mullens, Sr., who handled the transaction for the firm, authorized her to pay a part of the purchase price of the stock to M. S. Mullens, Jr., at Waco and used language calculated to induce her to believe that the said Mullens, Jr., was the authorized agent of the firm. At the time this transaction occurred, M. S. Mullens, Sr., was one of the assistant managers of the Dallas office, but he was not a member of the firm. He was what was known as "customers' man," and it was his duty to greet the customers when they appeared at the Dallas office on business, to assist them in placing their orders, and generally to "see that their wants were taken care of." There is no evidence that his principal ever consented to or expressly authorized him to delegate his authority, or to appoint or employ other agents to accept contracts for the purchase or sale of stock on behalf of the firm. His duties were not such as to give him the implied authority to do so. 2 Tex.Jur. 471; 2 C.J.S., Agency, p. 1357; 2 C.J.S., Agency, p. 1361; 2 Amer.Jur. p. 154. There is no evidence that the firm was informed of, or that it in anywise ratified, the conduct of M. S. Mullens, Sr., in this respect, and we believe it a sound principle of law that an agent, who has neither the express nor implied authority to appoint a subagent for his principal, cannot, in the absence of knowledge on the part of his principal, so conduct himself towards a third party as to create such agency by estoppel

and thereby estop his principal to deny the authority of such subagent. In other words, if an agent does not possess the authority to appoint an agent for his principal by direct conduct, he cannot do so indirectly by his misconduct. Kasch v. Williams (Tex.Civ.App.) 251 S.W. 816, par. 1.

■ From the above, we think it necessarily results that M. S. Mullens, Jr., was not the agent of Fenner & Beane with authority to accept Mrs. Lincoln's contracts on behalf of the firm for the purchase and sale of stock. Therefore Mrs. Lincoln's action to recover the stock bought by her through M. S. Mullens, Jr., and to recover the proceeds of stock sold by her through him lies against him alone and not against Fenner & Beane. If she bought the Commonwealth Edison stock from the firm at Dallas, as she contends she did, her action to recover such stock would lie against the firm alone, and the firm could not be held to a trial of this part of the suit against it in McLennan county over its plea of privilege. This would be true even though it should be conceded that M. S. Mullens, Sr., as agent for Fenner & Beane, had a right to, and did, designate M. S. Mullens, Jr., as the firm's agent to receive the balance of the purchase price of this stock, for under these circumstances she was contracting with a known principal and the agent would not be liable for a breach of the principal's contract. 2 Tex.Jur. 585, § 174; Johnson v. Armstrong, 83 Tex. 325, 18 S.W. 594, 29 Am.St.Rep. 648. It is apparent that the causes of action against the defendants are not joint but are separate and distinct, and consequently Fenner & Beane cannot be sued in McLennan county along with M. S. Mullens, Jr., merely because the latter resides in McLennan county. Danciger v. Smith (Tex.Civ.App.) 229 S.W. 909; Gladish v. Neeley (Tex.Civ.App.) 248 S. W. 751.

The plaintiff alleged a conspiracy between Fenner & Beane and M. S. Mullens, Jr., to convert plaintiff's stock to their own use and benefit, but they failed to prove the conspiracy, and hence cannot sustain the venue on this ground. Compton v. Elliott (Tex.Com.App.) 88 S. W.(2d) 91.

Since the causes of action are severable, it is proper to transfer the action against Fenner & Beane to Dallas county and to allow the court in McLennan county to retain venue over the suit against the resident defendant M. S. Mullens, Jr. 43 Tex.Jur. 877; Rutledge v. Evans (Tex. Civ.App.) 219 S.W. 218; Comer v. Brown (Tex.Com.App.) 285 S.W. 307; Balderama v. Simon (Tex.Civ.App.) 80 S.W.(2d) 1046.

The judgment of the trial court is reversed, and the cause remanded to the district court, with instructions to the trial court to transfer the suit against Fenner & Beane and E. H. Hulsey to Dallas county and to retain venue of the suit against M. S. Mullens, Jr.

### On Motion for Rehearing.

■ Appellee, on motion for rehearing, has called our attention to the opinion of the Supreme Court in Stockyards National Bank v. Maples, 95 S.W.(2d) 1300, in which it is held that, where a plaintiff alleges a joint cause of action against two or more defendants and proves a cause of action against the resident defendant, the plea of privilege of the nonresident defendants should be overruled, even though the evidence establishes that plaintiff has no right to recover against such out of county defendants. Under this holding, the trial court properly overruled the plea of privilege of the appellants. The plaintiff alleged that all the defendants conspired to and did make plaintiff believe that the business operated by M. S. Mullins, Jr., in Waco and that operated by Fenner & Beane in Dallas was one and the same business and that, but for the fraudulent representations made by the defendants in the carrying out of said conspiracy, plaintiff would not have intrusted her business to said M. S. Mullins, Jr.; that said fraudulent representations and acts on the part of defendants occurred in Waco; and that defendants, after getting possession of her stocks and money, converted same to their own use and benefit in McLennan county. Such pleadings were sufficient to allege a joint cause of action against the resident and nonresident defendants and the proof established prima facie a cause of action against the resident defendant. Under the authority above cited, the judgment of the trial court overruling the plea of privilege of the nonresident defendants must be affirmed.

The judgment heretofore entered reversing and remanding the cause is set aside and the judgment of the trial court is affirmed.