## SAMPSON et al. v. GANDY et al.
## No. 10544.

Court of Civil Appeals of Texas. Galveston.
April 28, 1938.

O. L. Kidd and Henderson, Kidd & Henderson, all of Cameron, and J. L. Lockett, J. L. Lockett, Jr., and Andrews, Kelley, Kurth & Campbell, all of Houston, for appellants.

L. W. Graves, Jr., and T. S. Taliaferro, both of Houston, for appellees Gandy, Schafer, and Winebrener.

Bernard A. Golding, of Houston, for appellees Swilley and Woodruff.

GRAVES, Justice.

This appeal is from an order of the Fifty-Fifth district court of Harris county overruling pleas of privilege of the appellants Sampson and Henderson, to be sued in Milam county, where they resided, on a cause of action filed against them in such Harris county court by the appellees Gandy, Schafer, and Winebrenner, in which the appellees Swilley and Woodruff had been joined as their codefendants—wherein those plaintiffs, Gandy, Schafer, and Winebrenner, had sought $256,900—damages against all the named defendants below, jointly and severally, for their alleged breaches, respectively, of declared upon contracts to deliver—and cause to be delivered—to such plaintiffs, their agreed upon portion of assignments of certain oil leases on 3,500 acres of land in Milam county.

The appealed from order, in so far as material, is this:

"* * * all parties to said cause having agreed that the said pleas of privilege and controverting pleas be heard on the said 24th day of March, 1936, and having appeared in person and by counsel at such hearing; and the Court having heard the evidence and the briefs and arguments submitted by counsel, took said cause under advisement, and being, now fully advised in the premises is of the opinion that the said pleas of privilege and each of them should be overruled; it is therefore,

"on this 27th day of June, 1936, over the objections of defendant Jim Sampson and of cross defendants Jim Sampson and John B. Henderson (as fully preserved by bills of exception) that because of the lapse of time this Court had lost jurisdiction to pass upon the contests of said pleas of privilege and had jurisdiction only to enter an order transferring this cause to the proper court of Milam County, Texas, ordered, adjudged and decreed that the plea of privilege of the defendant, Jim Sampson, be and it is hereby overruled at the cost of the said defendant; that the plea of privilege of the cross-defendants, Jim Sampson and John B. Henderson, likewise be and it is hereby overruled at the cost of the said cross-defendants."

The trial court supported its action by filing, at appellants' request, findings of fact and conclusion of law, the material parts of which may be thus quoted:

"Findings of Fact.

"1. At the time of the transactions out of which this case arose, at the time of the filing of this suit, and at the time of the hearing on the pleas of privilege herein, the defendants, H. D. Swilley and W. E. Woodruff, were both residents of Harris County, Texas; the defendant, Jim Sampson, and the cross-defendant, John B. Henderson, were both residents of Milam County, Texas.

"2. That prior to August 23, 1935, the defendants, Jim Sampson and John B. Henderson, had secured oil, gas and mineral-leases on the usual mineral-lease forms, from various owners of the property on a block of approximately five thousand (5,000) acres, situated in Milam County, Texas, such leases being taken in the name of Jim Sampson, and that Henderson and Sampson desired to procure someone to develop this block of acreage for oil. To this end they began negotiations with the defendants, Swilley and Woodruff, to procure someone to drill an oil well on this block of acreage.

"3. On or about August 23, 1935, Jim Sampson wrote Swilley and Woodruff a letter, which is as follows: * * *

"'Dear Sirs:

"'Mr. John B. Henderson, for the Milam County Abstract Company, is today mailing you copies of letters covering various lands in the S. Wilhelm, Clement Rainey, James Reed, and J. A. DePena Surveys in Milam County, Texas, in block form and said leases are inclosed to correspond with numbers shown on map, which is also being sent. The leases being sent are copies covering an aggregate of more than 5000 acres under agreement with me, you are to choose 3500 acres of this 5000 acres in a solid block upon which you and your. associates will make contract for a deep test well to a depth of 3500 feet, unless oil or gas in a commercial quantity is encountered at a lesser depth.

"'You will examine these leases and satisfy yourself as to their validity within 30 days from the date of this letter and will notify me by your written acceptance to that effect. * * *

"'In case you accept we are to make contract by which you are to commence the actual drilling with machinery adequate for that purpose of an oil well on some one of the leases to be designated by you and your associates. Contract for such well and the delivery of leases to be made finally between us upon your acceptance under the terms of this letter. It being understood that the actual drilling of such oil well is to begin within 90 days from the date of this letter, in case you accept, and to be prosecuted with due diligence to completion. Upon notification of your acceptance, the leases with proper escrow agreement, will be deposited in The First National Bank of Cameron, Texas. * * *

"'Yours truly,
"'Jim Sampson.'

"4. That thereafter, on or about September 14, 1935, defendant, Sampson, wrote defendants, Swilley and Woodruff, a letter, copy of which is as follows:

"* * * * *

"'Dear Mr. Swilley:

"'This you may consider a supplement to letter from me to you of date August 23rd, 1935, and also as an extension of the time of said letter.

" 'In accordance with my letter of August 23rd, 1935, allowing you 30 days from the date thereof to select 3500 acres of land out of the leases will say that the acreage hereto attached represents the acreage now allotted to you in accordance with our agreement set forth in the letter of August 23rd, above mentioned. On the list of 3500 acres which is shown below I grant you an additional 15 days time in which to accept or reject offer.

" 'Leases allotted to you are as follows:'

[Here are listed the names and numbers of acres of the several tracts].

" 'Total ....................3540 acres.'

" 'These lands are located in the Sarah Wilhelm, Clement Rainey, James Reed Surveys, and possibly part in the J. A. Depena survey, in Milam County, Texas.

" 'You will signify on the bottom of this letter your acceptance or rejection.

" 'Yours truly,
" '[Signed]   Jim Sampson.'

[In Ink]
" 'Accepted: Sept. 14, 1935.
" '[Signed]   H. D. Swilley
" '[Signed]   W. E. Woodruff.'

"5. That a map of the block of acreage, together with copies of the leases, mentioned in said letters, as held by Sampson were delivered to Swilley and Woodruff.

"6. That thereafter the time for the beginning of drilling operations mentioned in such letter was extended by Sampson and Henderson beyond the time the drilling operations hereinafter mentioned were begun.

"7. On or about November 23, 1935, Swilley and Woodruff, (first parties) entered into a contract with plaintiff, L. M. Gandy, and one W. M. Wallace (second parties) the material parts of which are as follows:

" '*  *  *  Parties of the First Part will, upon this proof, (of Second Parties' financial ability to carry out the contract) and the actual beginning of the drilling of a well, assign and sublease unto the Parties of the Second Part the following described land for drilling purposes, to-wit:'

[Here follows the description of approximately 1000 acres out of the 3540 acres described in Sampson's letter of September 14, 1935, supra.]

" '1. The Parties of the First Part agree to assign the above approximate one thousand (1000) acres in accordance with "Producer's 88 Special Texas Form", free of encumbrances, for the drilling of a well to a depth of approximately thirty-five hundred (3500) feet, or unless oil or gas in commercial quantities is found at a lesser depth, or the formation known as the Edwards Lime is found, said drilling to begin on or before March 1, 1936, with the Parties of the Second Part, to furnish adequate machinery to fulfill this obligation. The above leases are now in the name of Jim Sampson, of Cameron, Texas, and are being assigned by H. D. Swilley and W. E. Woodruff of Houston, Harris County, Texas, who have a contract authorizing them to do so.

" '2. Said Parties of the Second Part are to proceed within thirty (30) days with the actual drilling operations and are to have the privilege of completing three (3) or more shallow wells for fuel or commercial purposes, if so desired, and the said Parties of the Second Part will also have the privilege of designating what shall constitute the actual commencement of a well to be classified as the deep well, providing, however, that said drilling is begun on or before March 1st, 1936.'

*     *     *     *     *

"8. The above mentioned contract was executed in the City of Houston, Harris County, Texas, on or about November 23, 1935, although in the caption thereto it is dated November 16, 1935.

"9. At the time of its execution it was mutually understood that the same was not to be effective until after L. M. Gandy had inspected the leases on the properties held in the name of Jim Sampson.

"10. Prior to the execution of the above mentioned contract plaintiff, L. M. Gandy inspected the premises, accompanied by Swilley and Woodruff and defendant, Jim Sampson.

"11. After the execution of the above mentioned contract, plaintiff, L. M. Gandy, accompanied by Swilley and Woodruff, went from Houston To Cameron, Milam County, Texas, where Jim Sampson and John B. Henderson exhibited all of the leases involved to L. M. Gandy, and upon Gandy's refusal to accept the proposition because of an objectionable provision in one of the leases, actively procured the correction of this objectionable feature of one of the leases, for the purpose of inducing Gandy to go forward with the project.

"12. That on this occasion, Sampson and Henderson read the above mentioned contract, made no objections thereto, and assented thereto.

"13. Subsequently, W. M. Wallace assigned all of his interest in said contract to L. M. Gandy.

"14. Gandy thereupon interested W. H. Schafer and Raymond Winebrenner in beginning drilling operations on this block. Winebrenner had his attorney examine the legal matters incident to the relationship between Sampson, the holder of the legal title to the leases, and Henderson on the one hand, and Swilley and Woodruff on the other, the various leases, together with the Abstracts thereto were exhibited by Sampson to this attorney. Sampson acknowledged the signatures to the letters to Swilley and Woodruff and stated that they constituted the contract between Sampson, Henderson, Swilley and Woodruff and were sufficient, and, further stated that the assignments of the leases would be made upon the beginning of drilling operations.

"15. In reliance upon these representations and upon the contract of Jim Sampson, plaintiffs, W. H. Schafer and Raymond Winebrenner, entered into a written agreement with plaintiff, L. M. Gandy, by virtue of which Schafer and Winebrenner agreed to move their drilling rig, tools and equipment, at their expense, to these leases in Milam County, Texas, and to, on or before December 16, 1935, commence the actual spudding in of a well at a location to be selected by Gandy, and Gandy agreed to assign four hundred (400) acres of the leases to Winebrenner and Schafer.

"16. Thereafter Winebrenner and Schafer moved their drilling rig and equipment onto the leases, and spudded the well in on or about December 16, 1935, and thereupon immediately commenced drilling operations.

"17. The defendants, Sampson and Henderson, knew that the well had been spudded in and, during the drilling operations, did not raise any objections, did not in any way contend that the assignments were not to be made upon the spudding in of the well.

"18. Thereafter, drilling continued until on or about December 21, 1935, to a depth of approximately 225 feet, with indications that an oil well would probably be made and a paying oil sand found.

"19. That thereupon, the plaintiffs demanded delivery of the assignments of the leases to them. That at this time the defendants, Sampson and Henderson, did not deny that the assignments, under the terms of the agreements, were assignable to the plaintiffs at the time the well was spudded in, but, on the contrary, designated a time and place for the delivery of such assignments.

"20. That pursuant to the above mentioned demand, it was agreed that the leases would be delivered on or about December 21, 1935, and that on that date the parties, with the exception of Woodruff, met in Cameron, Milam County, Texas, and the assignments were actually drawn and executed but not delivered because of the absence of Woodruff. That it was then agreed that the same would be mailed to the office of the attorney for Woodruff and Swilley, in Houston, Texas.

"21. That up until this time, there had been no denial on the part of Sampson and/or Henderson that the contract had not been complied with or that the assignments were not then due.

"22. That Sampson and Henderson wrongfully breached their obligations to make assignments of said leases, and thereupon defendants, Swilley and Woodruff, were unable to fulfill their obligations and consequently breached the same without legal justification.

"23. That as a direct and proximate result of said breach of contract, plaintiffs have been damaged.

"24. That at all times it was understood between the parties that the assignments of the leases were to be made upon a commencement of drilling operations upon said block.

"25. That defendants, Sampson and Henderson, ratified and approved the agreement made between Woodruff and Swilley on the one hand and Gandy on the other.

"26. That Sampson and Henderson both expressly and impliedly represented to the plaintiffs that they would comply with their obligations, and would execute the assignments of the leases upon the commencement of drilling operations. That such representations were relied on by the plaintiffs to their prejudice.

"27. That on or about December 21, 1935, defendants, Sampson and Henderson, recognized their obligation to deliver the assignment of the leases.

"28. That the drilling operations conducted by the plaintiffs constituted permanent and valuable improvements to the properties.

"Conclusions of Law.

"From the foregoing, I conclude as a matter of Law:

"1. In so far as the plaintiffs are concerned, a mining-partnership existed between Sampson, Henderson, Swilley, and Woodruff.

"2. Sampson, Henderson, Swilley, and Woodruff were engaged in a joint-adventure.

"3. Sampson and Henderson impliedly if not expressly agreed with Gandy, in accordance with the contract of November 23, 1935, between Gandy and Swilley and Woodruff.

"4. Sampson and Henderson adopted and ratified the contract made by Gandy with Swilley and Woodruff.

"5. Sampson and Henderson are estopped to deny liability under said contract.

"6. The causes of action in favor of the plaintiffs against Swilley and Woodruff, and against Sampson and Henderson, are so closely related to each other that the same can only be properly tried in one proceeding.

"7. That all the pleas of privilege herein filed should be overruled."

The briefs and arguments of all parties in this court, except those of appellees Swilley and Woodruff, are violative of this court's rule No. XII as being "of inordinate or unreasonable length," but since they were filed before that rule became effective, no ex post facto visitation of its prescribed penalties may be laid upon them.

Preliminarily, it should be interpolated that Swilley and Woodruff, the resident defendants, on being so sued, had, through the method of becoming actors themselves, at once reconvened by cross-petition against Sampson and Henderson, the nonresident defendants, declaring upon the same contracts and agreements, as well as the same alleged breaches thereof by the latter, as had the plaintiffs against both sets of such defendants; praying in such cross-petition that Sampson and Henderson be required to specifically carry out such contracts and agreements with them, in order that they, in turn, might perform their own admitted obligations thereunder to the plaintiffs Gandy, Schafer, and Winebrenner; in so doing, they further charged that all such contracts and agreements had been mutually participated in—along with the nominal parties thereto—by the appellants, who had agreed to and adopted them as their own.

Since the quoted order and findings of both sorts by the able trial judge present a clear picture of the nature and result of the interlocutory proceeding as tried out there, thereby also plainly presaging what must be the reaches of a review upon it here, no further statement is needed.

This court, after a careful consideration of the arguments, both written and oral, and of the voluminous record, concludes that the overruling of the privilege pleas was correct.

It is unable to find any lack of support for the quoted fact findings, and, while it is obviously unnecessary to express its opinion upon all the stated conclusions of law, it does expressly approve the holding therein made that all the pleas of privilege were properly overruled, in the main upon its own conclusions hereinafter given.

The appellees renounce any claim as to the applicability of subdivision 29a, and defend the sustaining of the venue under subdivision 4 of article 1995, Vernon's Ann.Civ.St., only; the appellants, on the other hand, likewise ground their challenge of it upon such subdivision 4, relying however, on the latter half of it, which they thus italicize: *"The transfer or assignment of a note or chose in action shall not entitle any subsequent holder to sue thereon in any other county than that in which such suit could have been prosecuted if no assignment or transfer had been made."*

Their position being, to quote their own language, precisely this: "Plaintiff Gandy thus claims by assignment from Swilley and Woodruff, while plaintiffs Schafer and Winebrenner claim by assignment from Gandy, assignee of Swilley and Woodruff. Thus, all plaintiffs hold the position of assignees. Plaintiffs and cross-plaintiffs allege these several contracts as the basis of their action and cross-action, respectively, thereby, in effect, alleging that plaintiffs claim as assignees under Swilley and Woodruff."

This construction is also dependent upon appellants' further assertion that they were strangers to the contract between Gandy and Swilley and Woodruff of November 23 of 1935, and that in consequence there was no privity of contract at all touching the development of this 5,000 acres of leases either between themselves and Gandy, Schafer and Winebrenner, or Swilley and Woodruff. That contract itself contains a telltale provision to the contrary—when read in connection with the trial court's unattacked findings and the undisputed evidence as to the attending circumstances—

which, under italics inserted here, was this: "The above leases are now in the name of Jim Sampson of Cameron, Texas, and are being assigned by H. D. Swilley and W. E. Woodruff, of Houston, Harris County, Texas, *who have a contract authorizing them to do so.*"

■ In other words, the quoted findings and the undisputed evidence (appellants having offered no testimony whatever in their own behalf) show without dispute that they were not only fully conversant with and participating in the transactions between the nominal parties to that contract, but that they adopted it as their own, acted under it as such, and never objected to it, except preliminarily in order to make sure of Gandy's ability to carry it out, as to which they later became fully satisfied; so that, not only does this developed fact of the whole controversy between the parties here undermine the major support depended upon by the appellants for their claim of mislaid venue against them, but further, in the opinion of this court, brings the resulting factual basis of this cause as an entirety under the principle applied by the Supreme Court in Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300, at page 1304, in these answers to the first two questions therein certified:

"Our answer to the first question certified is: When, in a suit against two defendants residing in different counties brought in the county of the residence of one of them, the nonresident defendant files a plea of privilege to be sued in the county of his residence and the plaintiff seeks to sustain venue under exception 4 of article 1995, it is not incumbent upon the plaintiff in order to sustain the venue as laid to prove a cause of action against the nonresident defendant.

"To the second question we answer: Under the conditions set forth in the answer to the first question, the plaintiff established his right to maintain venue where laid, by alleging a joint cause of action against the two defendants, or a cause of action against the resident defendant so intimately connected with the cause of action alleged against the nonresident defendant that the two may be joined under the rule intended to avoid a multiplicity of suits, and by the proof afforded by the petition that such is the nature of the suit, and by proving, by independent evidence, that the defendant alleged to reside in the county where the suit is pending in fact resides in such county and the further fact that plaintiff has a cause of action as alleged against the resident defendant." See, also, Fenner & Beane v. Lincoln, Tex.Civ.App., 101 S.W.2d 305.

■ In this instance there is no doubt whatever that the petitions and controverting affidavits of the two sets of opposing litigants to the appellants, outlined supra, did allege a joint cause of action against the resident defendants, Swilley and Woodruff, and the nonresidents, Sampson and Henderson; further, that Swilley and Woodruff did reside in Harris county, and, finally, that the cause of action against all of such so jointly sued defendants was proven to the extent required by Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, thereby going further than the quoted holding in Stockyards Nat. Bank v. Maples, that it is only necessary to make such showing against the resident defendants.

Since these conclusions determine the merits of the appeal, further discussion is forborne; however, this opinion is not to be understood as questioning the other conclusions of law stated by the learned trial judge, but merely to indicate that no passing upon them is deemed necessary.

The judgment will be affirmed.

Affirmed.

PLEASANTS, C. J., absent.