## L. A. Crews v. Gulf Grocery Company.

### No. 2437. Decided February 23, 1916.

**1.—Corporation—Agency—Ultra Vires Contract.**

The president and general manager of a corporation created to carry on a wholesale mercantile business in groceries had authority, by virtue of his position, to collect debts owing to the company and make contracts proper for that purpose, such as to buy the stock and fixtures of a retail dealer indebted to it. The collection of its debt by this means being one of the main objects of such purchase, and a legitimate one, the company was bound by his contract, though his intention in making it was also for the company to continue the retail grocery business so bought, and this was not within the purposes contemplated by its charter. (Pp. 609-612.)

**2.—Estoppel—Pleading.**

Estoppel is not available unless pleaded. The acts of the seller of a stock of goods, suing the purchaser for failure to perform his contract, in afterwards mortgaging the stock, and in accepting a part of the proceeds of its sale by a receiver, will not preclude his recovery unless such estoppel was pleaded by defendant. (P. 612.)

Error to the Court of Civil Appeals for the First District, in an appeal from Jefferson County.

Crews sued the Gulf Grocery Co. and had judgment. This was reversed and rendered in favor of defendant on its appeal, and Crews obtained writ of error.

*Dougherty & Gordon, John M. Conley,* and *Ramsey, Black & Ramsey,* for plaintiff in error.—The president of a corporation may, for the purpose of collecting a debt due it from a creditor, otherwise unable to pay the debt, take in payment property from the debtor and agree to pay the debtor the difference between the value of the property and the corporate debt. Also he may take in payment property incumbered by other liens, such liens being still operative upon the property so taken. Panhandle Bank v. Emery, 78 Texas, 498; Farmers Natl. Bank v. Templeton, 40 S.

W., 412; Farmers Natl. Bank v. Templeton, 90 Texas, 503; Brown v. Mechanics Bank, 12 N. Y. Supp., 861; Cyc., vol. 10, pp. 904-905; Booker-Jones Oil Co. v. Natl. Ref. Co., 132 S. W., 816.

The president and general manager of a trading corporation has authority to make and enter into a contract for the purchase of goods, wares and merchandise incident to the general conduct of the business authorized by its charter, without express authority from the corporation by-laws or the board of directors, and persons dealing with him as such may rely on his authority to contract for the purchase and sale of any goods, wares and merchandise authorized to be bought or sold under the charter powers of the corporation, especially when the purchase or sale of such chattels is necessary for the carrying on and success of the business for which the corporation is chartered. 4 Thompson on Corporations, secs. 4618-4621; Cook on Corporations, sec. 719 (6th ed.); Ham v. Drew, 83 Texas, 77; Barker v. Tel. Mfg. Co., 116 N. W., 157; Sparks v. Dispatch Transfer Co., 104 Mo., 531, 15 S. W., 417; Chilcott v. Colonization Co., 88 Pac., 133; 10 Cyc., pp. 904-905; Cleghorn v. Barstow Irr. Co., 93 S. W., 1020.

*Joe Williams* and *Greer, Nall & Bowers,* for defendant in error.—A president of a corporation may have the same authority as conferred on an agent and may do everything necessary, proper or customary in the furtherance of the company's established business, but the power to buy and establish another and distinct business would clearly have to be expressly conferred, and such authority, as a matter of law, not appearing from the evidence, the court should have found for the defendant. Liquor Co. v. Magnus & Co., 43 Texas Civ. App., 463, 94 S. W., 1117; Irrigation Co. v. Eidman, 97 S. W., 698; Weckler v. First Natl. Bank, 42 Md., 581; Merchants Natl. Bank v. Armstrong, 65 Fed., 934; Cooley on Torts, 136; Bank v. Armstrong, 152 U. S., 470.

It appears from the undisputed facts in the case that the court at a former term had decreed the property in controversy to be the property of the plaintiff and had appointed a receiver by agreement of the parties to the suit and had ordered the stock of groceries and fixtures sold, and had applied the proceeds received from the stock of groceries to the discharge of the indebtedness which plaintiff was due various creditors who were intervenors, from which orders the plaintiff had not appealed, and, therefore, the plaintiff was not entitled to recover of defendant the contract price as sued for. White v. Matador Land & Cattle Co., 75 Texas, 465; Sour Lake Townsite Co. v. B. Deutser Furniture Co., 39 Texas Civ. App., 86, 94 S. W., 188; Woldert Grocery Co. v. Boonville Elevator Co., 42 Texas Civ. App., 524, 94 S. W., 108.

It is the general rule that the president of a corporation has no power to buy, sell or contract for the corporation, nor to control its property or funds in the absence of an action of the board of directors clothing him with such power, and it appearing in this case that the stockholders had authorized the board of directors to go into the retail business if

they deemed it advisable, and this power had not been delegated to the president, the president of the company had no power to act alone with respect thereto, and the conclusion of the Court of Civil Appeals in finding for the defendants was correct.   Third Ave. R. R. Co. v. Ebling, 12 Daley (N. Y.), 99; Twelfth St. Market Co. v. Jackson, 102 Pa., 269; Westerfield v. Rodde, 7 Daley (N. Y.), 326; Reed v. Ashburnham Ry. Co., 120 Mass., 43; Westcott v. Silk Co., 3 Metc. (Mass.), 282; vol. 10 Cyc., pp. 903-909; Fitzhugh v. Franco-Texas Land Co., 81 Texas, 306; Franco-Texas Land Co. v. McCormick, 85 Texas, 417; Manhattan Liquor Co. v. Magnus Co., 43 Texas Civ. App., 463, 94 S. W., 1119.

The undisputed evidence showed that after the plaintiff had contracted with the defendant to sell the property the plaintiff, without the knowledge or consent of the defendant, executed a mortgage upon a portion of the property embraced in the contract of sale to secure the payment of $1000 due to Floyd Mahoney, and that this mortgage was established and foreclosed upon the property described therein and in this suit, and for this reason this court should find for the defendant.   Ogburn-Dalchau Lbr. Co. v. Taylor, 126 S. W., 48; Nass v. Chadwick, 70 Texas, 157; Waples v. Overaker & Co., 77 Texas, 11; Woldert Gro. Co. v. Boonville Elevator Co., 42 Texas Civ. App., 524, 94 S. W., 108.

MR. JUSTICE YANTIS delivered the opinion of the court.

The plaintiff in error, L. A. Crews, was engaged in the retail grocery business, in the town of Port Arthur, Texas, at the time the alleged cause of action sued upon arose.   The Gulf Grocery Company, defendant in error, was a corporation, and was engaged in the wholesale grocery business in said town.   Crews, as plaintiff in the District Court, filed suit against the Gulf Grocery Company for damages for the alleged breach of a contract of purchase by the Gulf Grocery Company of Crews' stock of groceries and store fixtures.   The trial was by jury, and the case was submitted to the jury on a general charge.   The judgment was in favor of the plaintiff, Crews.   The Gulf Grocery Company appealed to the honorable Court of Civil Appeals for the First District.   In that court the judgment was reversed and rendered in favor of the Gulf Grocery Company, said court holding that the special charge requested by the Gulf Grocery Company, which was a peremptory charge in its favor, should have been given, the reason assigned by it being that the undisputed evidence showed that W. N. Holmes, the president and general manager of the Gulf Grocery Company, was without authority to make the contract of purchase, with the purpose in view for it to engage in the retail grocery business.   A writ of error was granted by this court on the petition of Crews.

For a statement of the issues we extract from the opinion of the honorable Court of Civil Appeals the following:

"Plaintiff in his amended and supplemental petitions, upon which the case was tried, alleged in substance that the defendant, on or about January 29, 1910, acting by and through W. N. Holmes, its president

and general manager, and duly authorized agent, entered into a verbal contract with appellee by the terms of which the defendant corporation contracted and agreed to purchase from plaintiff a stock of groceries in the town of Port Arthur, Texas, owned by the plaintiff, together with the store fixtures owned and used by plaintiff in the grocery business he was then conducting in said town, and to 'reimburse plaintiff for moneys expended by him in launching the said business by advertising the same at Port Arthur, Texas, contracting and agreeing with this plaintiff by parol, to pay him the sum of dollar for dollar in cash for said stock of groceries and fixtures and agreeing to take charge of said stock of groceries and fixtures on the first day of February, 1910, and to take possession thereof and reimburse the plaintiff in full for all expenses incurred by him in launching said business by way of advertising the same in the city of Port Arthur, Texas, and paying him therefor in cash according to the inventoried cost price to plaintiff on the first day of February, 1910, and in consideration of the premises, plaintiff agreed and contracted with the defendant, by parol, to sell and deliver said groceries and fixtures incident to said business, agreeing to deliver possession thereof to the defendant corporation on the first day of February, 1910, and according to the terms of the parol agreement with the defendant, as aforesaid, and to receive on said date the contract price therefor in cash as above mentioned.'

"The inventory value of said stock of groceries is alleged to be the sum of $3690.49; the cost price of the fixtures, $3753.25, and the amount expended by plaintiff in advertising his business prior to the execution of said contract of sale, the sum of $500, the aggregate of said amount being the sum of $7943.74.

"Plaintiff further alleged that in compliance with his part of the agreement he tendered said stock of groceries and fixtures to defendant on the first day of February, 1910, but the defendant refused to accept them.

"Plaintiff further alleged that on the first day of February, when he tendered said stock of groceries and fixtures to the defendant, it requested plaintiff to hold the property and continue the operation of the business as the property of the defendant until March 10, 1910.

"Plaintiff further alleged that on the 14th day of May, 1910, he filed his first amended original petition, alleging insolvency on the part of the defendant Gulf Grocery Company, and praying for the appointment of a receiver for said company, and in lieu of a notice to show cause why a receiver should not be appointed, defendant, in order to indemnify plaintiff for any judgment that he might recover against it, agreed to and did execute a bond payable to plaintiff, contingent upon the recovery of a judgment against the defendant in which the sureties on said bond agreed to make themselves parties defendant to the said suit and agreed that any judgment rendered against the defendant might also be rendered against them in said suit, said sureties being the defendants, W. N. Holmes and R. H. Woodworth.

"The defendant filed its amended answer, on which it went to trial on January 16, 1911, and, in addition to exceptions, answered by general denial and specially denied that it made the contract to purchase from plaintiff, or that it agreed to take over plaintiff's business; that it was contemplating going into the retail grocery business and that the same was discussed at its stockholders' meeting and by resolution of its stockholders the directors of the company were authorized to enter into negotiations or to make such arrangements as to them might seem proper, and to determine whether or not the defendant should or should not enter into the retail grocery business in Port Arthur; that defendant's directors declined to go into the retail grocery business or to purchase the plaintiff's stock of goods. That if defendant's agent, W. N. Holmes, did make the agreement with plaintiff, as alleged by him, then he was without authority to bind defendant, if ever he had agreed so to do, as such authority is lodged in defendant's board of directors by its by-laws and is not delegated to its president, which fact was well known to plaintiff, and he was advised at all times that W. N. Holmes did not have such authority.

"Defendant further alleged that plaintiff was indebted to it in the sum of $1889.86, with six per cent interest thereon from January 1, 1910, for goods, wares and merchandise sold; that a receiver had been appointed for plaintiff's stock of goods and under order of the court had sold same and paid the proceeds to plaintiff's creditors, and defendant had received from said receiver a twenty per cent dividend out of said proceeds amounting to $377.96.

"On January 16, 1911, plaintiff filed his second supplemental petition and alleged that W. N. Holmes was at the time of the making of the contract sued on by plaintiff president and general manager for the Gulf Grocery Company, and, as such, had express authority under the by-laws of the Gulf Grocery Company in force at that time to make and enter into the contract sued on by plaintiff.

"Plaintiff also alleged that the said W. N. Holmes had authority to make said contract, because the same was within the charter powers of said Gulf Grocery Company.

"Plaintiff further alleged that at the time said contract was entered into between plaintiff and defendant, plaintiff was indebted to the defendant Gulf Grocery Company in a large sum of money, to-wit, about $2000; that it was contemplated by the parties to said contract as one of the inducements thereto, and one of the moving considerations on the part of the defendant, that the debt of the Gulf Grocery Company should be deducted from the purchase price of the properties, and that the contract was in fact made by the defendant company, induced by the consideration that in making said contract it would in fact protect and collect its debt due it by plaintiff on open account for goods, wares and merchandise, and by reason of these facts the said Holmes, as president and general manager of said corporation, had authority to make the contract sued on by the plaintiff as a matter of law.

"Plaintiff also alleged that the defendant company was bound by said contract for the additional reason that said association is a trading corporation under the law and is bound by the rules of law governing trading corporations, and the defendant company being a trading corporation, and acting by and through its president and general manager, was liable for the contract made by him as a matter of law.

"On the 16th day of January, 1911, defendant filed its first supplemental answer, and, besides exceptions to plaintiff's second supplemental petition, urged a general denial."

The plaintiff in error, Crews, further alleged that when the alleged contract of sale was made, January 29, 1910, he had a solvent, prosperous business, which was daily increasing, and that the defendant in error, the Gulf Grocery Company, on said date in fact took possession of his said business under said contract by causing the preparation and mailing of a certain letter to each of his creditors, in which the said Gulf Grocery Company, in substance, advised each of his creditors to send in a statement of their accounts against L. A. Crews, and that it was *very important* that they should do so; that immediately thereafter his creditors sent in statements of their accounts which he was unable to pay at that time, but that it was understood in said contract of sale that the said Gulf Grocery Company would pay said accounts and deduct them from the price of said stock of goods and groceries; that before said letter was written by the Gulf Grocery Company to his creditors they were not pressing him for the payment of his debts, but after said letter had been received by them they immediately began to press him vigorously for the payment of their claims; that this condition of affairs caused his financial ruin; that on the first day of February, 1910, when he tendered the said stock of groceries and fixtures to the Gulf Grocery Company, it requested him to hold the property and continue the operation of the business, and to hold the property as the property of the said Gulf Grocery Company until the 10th day of March, 1910, or until the return of John W. Gates, a director in the defendant company; that on said last date the Gulf Grocery Company applied for and secured the appointment of a receiver for his said business.

The contention is made by the Gulf Grocery Company that the undisputed evidence showed that when Holmes, as general manager of the Gulf Grocery Company, proposed to Crews to purchase his stock of groceies and fixtures, he, Holmes, had the purpose in view for the Gulf Grocery Company to enter the retail grocery business, and to use said stock of groceries therein; that though it had been proposed by the stockholders of the Gulf Grocery Company to its directors for it to enter the retail grocery business, it had not been decided by the board of directors so to do. It was on this theory that the defendant in error requested a peremptory charge at the trial in his favor. It was this contention which was sustained by the honorable Court of Civil Appeals

when it reversed and rendered this cause in favor of the defendant in error.

If to enter the retail grocery business were the only purpose entertained by Holmes when he made the proposition to purchase Crews' stock of groceries, a serious question, and one not free from difficulty, would be presented. But the evidence shows that one of the controlling purposes of Holmes was to collect from Crews, on behalf of the Gulf Grocery Company, a large debt, in the neighborhood of $2000, which the evidence indicates might and probably would have been lost unless collected in this way. There is no dispute about this. It was stated by Holmes at the time the proposition to purchase was made that in paying Crews the Gulf Grocery Company would expect to deduct the amount which Crews owed it from the consideration agreed upon. At the trial Holmes himself testified that to collect this debt was one of his main reasons for proposing to purchase the stock of groceries, fixtures, etc. He testified on this point as follows:

"At the time of this transaction Mr. Crews owed the Gulf Grocery Company about $1900. Of course when discussing this deal, that was one of our objects in particular, to take out the $1900 owed us. We figured, among other things, that we would collect the debt to the Gulf Grocery Company; that was the only way we could get any money out of it."

Crews testified on that point as follows:

"Well, they were heavy creditors of mine. I owed them more money than I did anyone else, which I thought then was one of the main reasons for wanting to buy me out."

He further testified:

"The main consideration or point made was that the Gulf Grocery Company should get their money, and get it first."

We think this evidence presents a very different question from the one contended for by the Gulf Grocery Company, which was to the effect that Holmes was acting beyond the scope of his powers as president and general manager of the Gulf Grocery Company to enter the retail grocery business. This was stated by Holmes it is true, at the time of the proposed purchase, to be one of his purposes. If this proposition contended for by the defendant in error were admitted to be sound, still there would be present the other question, that is, whether Holmes was acting beyond the scope of his powers as president and general manager of the business of the Gulf Grocery Company to purchase Crews' stock of groceries, fixtures, etc., in order to collect a large debt which the Gulf Grocery Company would otherwise probably lose. We think this question is the controlling one. A part of the safe management of the business of the Gulf Grocery Company was the collection of its debts. The duty to collect its debts was clearly within the scope of Holmes' powers as president and general manager. Without this authority to continue the business of the Gulf Grocery Company as a going concern would be impossible. If this authority were denied to him, the Gulf Grocery Com-

pany would soon be forced into liquidation; for if Holmes, its president and general manager, were authorized to sell goods, and prohibited from collecting the debts created by such sales, bankruptcy would be inevitable. That he had the power to collect debts due the Gulf Grocery Company is not even debatable. He could not be a general manager without having this authority. It is necessarily implied as one of the duties of the president and general manager. Of course as general manager he could have in his employ men to do the collecting for the Gulf Grocery Company, but they must necessarily act under his direction and control, and probably be subject to discharge by him if they failed to obey his instructions, and to comply with his demands about making collections. Though he had others employed to do the collecting, he would still have the general control and supervision of the collections. So to admit that he was general manager concedes that he had the power to collect the debts due to the Gulf Grocery Company. Now, having this authority, it follows, we think, that he would be acting within the scope of his powers as general manager when in order to collect a debt for it, he should purchase property from one of its debtors and deduct the debt due to it from the agreed consideration. Thompson on Corporations, (2nd ed.), secs. 1465, 1491, 1575 and 1576; Panhandle National Bank v. Emery, 78 Texas, 498, 15 S. W., 23; Farmers National Bank v. Templeton, 40 S. W., 412; Booker-Jones Oil Co. v. National Refining Co., 132 S. W., 816; Thompson v. Mills, 45 Texas Civ. App., 642, 101 S. W., 561; Hamm v. Drew, 83 Texas, 77, 18 S. W., 434.

This is especially true when the property purchased, as in this instance, is of a kind and character which could be used in the main line of business of the Gulf Grocery Company. It was engaged in the wholesale grocery business, and the stock of goods which its manager was agreeing to purchase, could be placed with its stock of groceries and disposed of by .it in its regular line of wholesale business. And as Holmes was buying the stock of groceries at wholesale prices, it would suffer no loss by purchasing the groceries and reselling them for its wholesale business, and it would at the same time save the large debt due to it by Crews, which Holmes testified was one of the main purposes he had in view. It was not necessary for the Gulf Grocery Company to enter the retail business in order to dispose of the goods which it was purchasing from Crews. This we think states a case where it is evident that Holmes, as president and general manager, was acting within the scope of his powers in making the contract to purchase Crews' stock of groceries. The fact that one of his purposes was to enter the retail grocery business, if not itself within the scope of his powers so to do, would not nullify his contract when one of the main purposes for making it was within the scope of his powers. Having authority to purchase the stock of groceries in order thereby to collect a large debt, the mere fact that another reason which prompted him to make the purchase might be beyond his powers as a general agent, would not render illegal the contract. If for any reason growing out of the facts.

Holmes had authority to make the contract and bind the Gulf Grocery Company, this would be sufficient to defeat the defendant in error's contention that Holmes acted without authority in making the contract. We, therefore, are of the opinion that the honorable Court of Civil Appeals erred in holding that the peremptory charge requested by the defendant in error should have been given.

Several special charges were requested by the defendant in error, presenting in different forms that the plaintiff in error, Crews, was estopped to demand recovery for breach of the contract by his own conduct in relation to the stock of groceries and fixtures after the contract was repudiated by the Gulf Grocery Company. These charges were based upon evidence that Crews mortgaged the fixtures or groceries in favor of one of his creditors, and that after the receiver sold the property he received and accepted from the court several hundred dollars as the proceeds of the sale of the fixtures as being exempt from forced sale. There was no plea of estoppel made by the defendant in error, and no pleading by it which alleged any of said facts from which an estoppel could be deduced. The defense, therefore, should not have been submitted, and the special charges referred to were properly refused. A remittitur was filed below covering the amount of money which was paid Crews by the receivership suit. But had this not been done, the rule would be the same as applied to the refusal of said special charges.

We have examined all of the assignments presented by the defendant in error and hold them to be without merit.

For the error indicated in the holding of the Court of Civil Appeals, its judgment is reversed, and the judgment of the District Court is in all things affirmed.

*Reversed and judgment of District Court affirmed.*