**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Glen DAVIS, Individually and as next friend of Felicia Gay Davis, a minor, Appellee.**

**No. 8411.**

Court of Civil Appeals of Texas, Amarillo.

Dec. 3, 1973.

Rehearing Denied Jan. 7, 1974.

Crenshaw, Dupree & Milam, Max C. Addison, Lubbock, for appellant.

Lemon, Close, Atkinson & Shearer, R. D. Lemon, Perryton, for appellee.

REYNOLDS, Justice.

Appellee Glen Davis, individually and as next friend of Felicia Gay Davis, a minor, recovered a money judgment from, and under a purported insurance contract made by, appellant Southern Farm Bureau Casualty Insurance Company. The dispositive query is whether there was, and we determine there was not, a valid contract of insurance in force. Reversed and rendered.

The focal point of the factual situation developed is a purported contract of insurance, alleged by appellee to have been in force and covering appellee's 1970 Chevrolet pickup on August 4, 1970, the date appellee's minor daughter, Felicia Gay Davis, was thrown from the back of the pickup, sustaining serious injuries. The importance of the chronology involved warrants a recapitulation of the evidence.

Since approximately 1968, Glen Davis had purchased various types of insurance coverage from Southern Farm Bureau Casualty Insurance Company, home officing in Waco, Texas, through Ralph Headlee, managing agent of appellant's Perryton, Texas, office. Such coverage consisted of insurance on several houses in Perryton, two personal automobiles and a 1962 Chevrolet pickup. Concerned here is the insurance policy pertaining to the 1962 pickup. The policy, No. WVGVO2, was issued July 10, 1969, for a six month period. The policy consisted of a printed contract denominated "FAMILY AUTOMOBILE POLICY" of general terms and conditions and a separate printed declaration of terms and conditions with spaces completed with the data pertinent to the 1962 pickup, the property insured. By its terms, the policy expired on January 10, 1970,[1] at 12:01 a. m., except, as provided in the declaration, the policy

" . . . may be continued in force for successive policy periods by the payment of the required renewal premium in advance of each such period and the acceptance of such premium by a duly authorized representative of the company."

No renewal premium was paid in advance of January 10; however, Davis submitted the renewal premium on January 12 to appellant's office in Perryton. The payment was forwarded to appellant's home office and received on January 14. No policy declaration was issued indicating renewal of the policy. Headlee testified that the vehicle was insured as of January 10,

1. All dates hereafter referred to are in the year 1970.

and no dispute is made of this testimony. The coverage was afforded, according to Headlee's testimony, since it was appellant's policy to renew the insurance if the renewal premium were received within ten days after expiration. This testimony was not corroborated by written evidence or otherwise.

Two or three weeks prior to July 10, the expiration date of the renewed policy, Davis received appellant's notice of the renewal premium due on that date. The renewal premium was not paid. On July 22, Joy Wright, a secretary employed by the Ochiltree County Farm Bureau, telephoned Davis and, according to Davis' version of the conversation, asked Davis if he desired to continue coverage on his vehicles. Davis said that he did and instructed Joy Wright to "Go ahead and write it up . . . I will be down to take care of it in a few days." He also informed her that he exchanged pickups and now owned a 1970 Chevrolet pickup and desired that it be included in the policy. Joy Wright told him, "That will be just fine with us. We will need your serial number."

On the same day, a letter addressed to Glen Davis and signed by Ralph Headlee contained the following language:

"We have been notified by our company office that the insurance on your 1968 Olds, policy WVGVO1 in the amount of $34.30 and your 1962 Chevy Pk-up, policy WVGVO2 in the amount of $34.30 is lapsed.

"You may already have mailed your check for this. If you have, please accept our thanks and disregard this letter. However, if you have not, and wish your insurance to remain in effect, please do so at once."

This letter and the conversation with Joy Wright are the only instances upon which Davis relies for his contention that the policy which expired July 10, was, in fact, renewed and kept in force. It is undisputed that the July 22 conversation took place.

Davis' written statement made on September 4 and entered in evidence, read in part: "I received this letter about the same week that I was called by the Ochiltree County Farm Bureau office." Davis, however, testified at the trial, that he never received the July 22 letter, and in his September 4 statement he was referring to a computer card which he had received, notifying him of the due date of his renewal insurance.

Davis took no further action regarding the insurance on the 1970 Chevrolet pickup until August 5, 1970, one day after his daughter sustained her injuries, when the Perryton office was requested by another party to draw a draft on Davis, "to pay for the two automobiles to reinstate it." As a result of this requested action, appellant issued a declaration insuring the 1970 Chevrolet pickup effective August 10. Upon the refusal of appellant to pay the claim, Davis brought suit which resulted in the judgment that is the subject matter of this appeal.

Appellant insurance company's appeal is premised upon twenty-seven points of error. Points one through eighteen, and twenty-three and twenty-four all advance the central complaint that there was no evidence or insufficient evidence to establish that any person with authority to bind appellant made any offer to appellee Davis which was accepted by him for a contract of insurance on the vehicle in question covering the date of the accident, August 4, 1970. Preliminary to a discussion of the sufficiency of the evidence to show an offer and acceptance, it is necessary to examine and resolve the question of the authority of either Ralph Headlee or Joy Wright, or both, to make any offer to extend insurance coverage for the vehicle.

Appellant's main premise is that neither of these individuals were clothed with authority, actual or apparent, to the extent that any purported offer of insurance coverage made by either or both of them would be binding on appellant. The deter-

mination of actual authority is controlled by the document entered in evidence entitled "Agency Manager's Contract," which specifically delineates the extent of, and the limitations on, the agency manager's authority. The contract provides in part that Headlee was " . . . appointed an Agency Manager for the Southern Farm Bureau Casualty Insurance Company . . . for the purpose of soliciting and servicing . . . any or all lines of business the Company shall offer, . . . ." The other pertinent provisions of the contract read as follows:

"3. LIMITATION OF AUTHORITY

You agree not to:

A. Make, alter or discharge any contract of insurance; waive any forfeiture; waive payment in cash; extend the time of payment of any premium; . . . nor receive any money due or to become due, except first premiums and coverage fees, (if any).

B. Accept payment from an insured for renewal or past due premium or any payment except as agent of the insured.

C. Incur any indebtedness or liability on behalf of the Company, unless authorized in writing."

▮ It is apparent from these quoted provisions that Ralph Headlee could not enter into a binding contract of insurance on behalf of appellant or alter or extend the provisions of any existing contract of insurance; rather, his authority was limited to soliciting applications for insurance and to serve as a conduit between appellant and the insured. A mere soliciting agent cannot bind an insurance company, especially when his powers are limited to receiving and forwarding applications for insurance. Dugan v. General Accident Fire & Life Assurance Corporation, 421 S.W.2d 717 (Tex.Civ.App.—Houston [14th Dist.] 1967, writ ref'd n. r. e.). Since Headlee,

the agency manager, had no authority to make the offer appellee relies upon, it is clear that Joy Wright, the office secretary, had no such authority either. An agent, without authority to perform a certain act, cannot delegate the doing of that act to someone else. Hearn v. Hanlon-Buchanan, Inc., 179 S.W.2d 364 (Tex.Civ.App.—Fort Worth 1944, writ ref'd w. o. m.). Although Headlee and Joy Wright had the authority to make the solicitations for insurance, it cannot be said that such actual authority extended to issuing offers which would lead to a contract of insurance binding on the appellant absent appellant's consent.

▮ Appellee further claims that Headlee and Joy Wright, or either of them, made a valid offer due to their apparent authority. Recently, in the case of Roberts v. California-Western States Life Ins. Co., 470 S.W.2d 719 (Tex.Civ.App.—Amarillo 1971, no writ), the same contention was before this court, and we there adopted the principles declaring that:

"When an apparent authority is claimed to arise from representations or conduct, the acts and statements of the principal must be looked to for the requisite foundation and not those of the agent; the former alone can give rise to authority of this character; the latter are never in themselves sufficient for that purpose. * * * The powers which the agent pretends to have, or assumes to exercise, are inoperative as a basis for ostensible authority when the principal is not affected by knowledge of them and does not validate them by acquiescence or assent; and no mere combination of circumstances which may, without the principal's participation, mislead third persons, however reasonably, into a false inference of authority affords a sufficient predicate for apparent authority."

There is nothing in this record to indicate that appellant was aware of any offer its agent made contrary to his authority, and it is manifest from the record that appel-

lant neither acquiesced in nor assented to the offer appellee contends was made. It follows that neither Ralph Headlee nor Joy Wright possessed any authority, actual or apparent, to make an offer of insurance coverage that in itself was binding on appellant.

Under the contract of insurance issued to and accepted by appellee Davis, the sole method of renewal of insurance coverage consisted of payment of the renewal premium in advance of the expiration date of the current policy and its acceptance by a duly authorized representative of appellant. More than forty years ago, our Supreme Court approved the rule that the provisions of an insurance policy are binding on an insured whether he has read those provisions or not. American National Ins. Co. v. Huey, 66 S.W.2d 690 (Tex.Com.App. 1933). Nevertheless, appellee strongly contends that the renewal provision is ineffective as to him because the prior dealings between the parties established a custom of acceptance of late payments, and appellant thereby waived the renewal provision with respect to the renewal payment made on August 5. Appellee then argues that the fact appellant accepted a late payment for renewal of the policy on January 10, and failed to issue a new policy declaration at that time created the custom resulting in the waiver of timely payment of the renewal premium due before the July 10 expiration date. Under the law as applied to the facts of this case, the argument is not persuasive.

■ The acceptance of the January 10 renewal premium tendered two days late and accepted four days late as timely for renewal of the policy is the only instance shown by the evidence to involve acceptance of a late premium. It is the generally accepted rule that proof of the receipt of only one late payment of premium on an insurance policy does not establish a custom of acceptance of tardy payments so as to establish waiver of timely payments by the insurer. McClure v. State Farm Mutual Automobile Ins. Co., 113 Ga.App. 467,

148 S.E.2d 475 (1966); Meyers v. State Farm Life Ins. Co., 416 S.W.2d 10 (Mo. Ct.App.1967); Okamura v. Time Ins. Co., 24 Utah 2d 209, 468 P.2d 958 (1970); State Farm Mutual Automobile Ins. Co. v. Robison, 11 Ariz.App. 41, 461 P.2d 520 (1969). Rather, a custom or usage with respect to acceptance of late payment of premiums exists only when followed for a substantial period of time. Okamura v. Time Ins. Co., supra. Neither is the fact that appellee did not receive a new declaration upon renewal of the policy effective January 10, significant. The policy does not provide for a new declaration to be issued upon renewal; no testimony establishes that a new declaration was required or issued for a renewed policy.

■ Moreover, and perhaps alone decisive, the offer appellee contends was made and relied on could not ripen into a contract of insurance until the required premium was paid. The premium was not tendered until after occurrence of the loss appellee says was insured. It has been held that when an insurance company proposes to renew a policy upon payment of a premium, and the insured retains the policy and does not respond to the proposal by paying the premium until after a loss, there is no completed contract of insurance. See Trinity Universal Ins. Co. v. Rogers, 215 S.W.2d 349 (Tex.Civ.App.— Dallas 1948, no writ).

Therefore, there is no evidence in this record to either raise a fact issue or to support a finding that anyone with authority to bind appellant made an offer, accepted by appellee, which resulted in a contract of insurance covering appellee's 1970 Chevrolet pickup on August 4, the date of loss. Consequently, appellant's no evidence points included in the points heretofore referred to are sustained; the remaining insufficient evidence points become immaterial, but if they were reached, all would be sustained except those directed to the motions for instructed verdict and for judgment non obstante veredicto, which would be overruled.

Points 21 and 22 are that there is no evidence or insufficient evidence to establish the terms of any contract based upon the offer and acceptance alleged by appellees. In view of the disposition reached, we do not discuss these points, but if they were material to the decision, the points would be overruled.

The remainder of appellant's points of error are directed to the incorrectness of certain special issues. Under the view we have adopted, these points are not reached.

The trial court's judgment is reversed, and judgment is here rendered that appellee take nothing.