**PREFERRED RISK MUTUAL INSURANCE COMPANY, Appellant,**

v.

**James D. RAVUN et ux., et al., Appellees.**

No. 12593.

Court of Civil Appeals of Texas, Austin.

Jan. 18, 1978.

Rehearing Denied Feb. 8, 1978.

Burnie Burner, Long, Coleman, Dugger & Cotten, Austin, for appellant.

Philip L. Spies, Mack Kidd, Austin, for appellees.

O'QUINN, Justice.

Preferred Risk Mutual Insurance Company brought this action for declaratory judgment to establish that as a matter of fact plaintiff had no valid policy of insurance in effect protecting any persons involved in an automobile accident occurring on the evening of July 23, 1975.

In bringing suit, Preferred Risk made James D. Rabun and wife, Nellie Ruth Ra-

bun, defendants, and also sued Cynthia Beth Johnson and Jay Martin Greider, the latter two parties being occupants of the vehicle in collision with the Rabun vehicle on July 23. Greider and Johnson earlier had brought suit against State Farm Mutual Insurance and others (District Court Docket No. 240,525) for personal injuries, which cause later was consolidated with the action brought by Preferred Risk.

Subsequently, prior to trial before the court, the consolidation order was set aside, and trial proceeded on the action for declaratory judgment and the cross action brought by Rabun and wife for damages to the vehicle Rabun was driving at the time of the accident.

In the action by Preferred Risk, issue was joined on whether the Rabun insurance policy, which the company had cancelled, had been effectively reinstated by the company's local recording agent, Charles Richard Clack. The essential facts were that the insurance policy had been cancelled by the company on June 9, 1975, and notice of premium due, followed by notice of cancellation, had been received by the Rabuns. Afterwards, on the evening of July 19, a conversation by telephone took place upon which the Rabuns relied to show reinstatement by Clack in behalf of the company.

The Rabuns and Clack were close friends, being members of the same church of the Pentecostal faith, and Clack had been the Rabuns' insurance agent since January of 1974, during which time Clack had sold the Rabuns several policies of Preferred Risk, covering life and casualty contracts. The company conceded, and the trial court found, that Clack was a "local recording agent" as defined by Article 21.14, sec. 2, Texas Insurance Code, "being authorized by an insurance company . . . to solicit business and to write, sign, execute, and deliver policies of insurance, *and to bind companies on insurance risks* . . ." (Emphasis added).

On the evening of July 19, 1976, Clack called the Rabun residence by telephone to obtain Mrs. Rabun's services as a babysitter. In the course of the telephone contact, Mrs. Rabun told Clack her husband wanted to get the policy reinstated, and Rabun spoke to Clack and advised him that Rabun had the money to pay the insurance premium and wanted the lapsed policy reinstated.

Rabun testified at trial that Clack stated that his schedule would not permit a meeting for actual payment of the premium until July 24, but told Rabun "not to worry, everything is fine." From this conversation, the trial court found that both Rabun and his wife expressed their present interest to reinstate their insurance coverage.

On the evening of July 23, 1976, a day prior to the date (July 24) Clack had on July 19 advised Rabun he would be able to meet and receive the premium payment, Rabun was involved in the accident giving rise to this litigation. That same day Mrs. Rabun went to Clack's home, informed him of the accident, and completed a reinstatement form and paid the required premium. At Clack's suggestion, both the form and the check in payment of the premium were backdated to serve as a memorandum of the conversation and transaction on July 19, prior to the accident. The record shows the check to be dated July 19 and the form on July 21.

Clack testified that this procedure was followed solely to enable the company to consider sufficiency of the conversation of July 19 to provide coverage during the critical period. When the claim was presented a month later, Preferred Risk declined to pay the damages, found by the trial court to be in the amount of $756.07.

Testimony in the record shows that Clack on previous occasions had sold the Rabuns insurance on the basis of an oral agreement. Their practice was that Clack would return to the Rabuns later and submit a policy dated as of the day the oral binder was made, and the Rabuns would be billed for the premium at a later date. It had been Clack's practice, in cases of reinstatement, to pick up the premiums at the Rabun home subsequent to their conversation. The trial court found that Clack had reinstated insurance coverage by oral binder for the Rabuns in the past on other policies of insurance.

Clack's contract with Preferred Risk expressly provided that an automobile policy was not to be reinstated by oral binder. Clack testified, however, that at the time of the transaction in question, he was not sure what kind of authority he had, since he had not recalled reading such provision in his contract. Clack also testified that after the accident and the company's reaction, he was "confused" as to whether the Rabuns actually had coverage, and that by backdating the check, he was trying to help the Rabuns and to see that the insurance covered the accident if at all possible, but that he did not really know whether it would.

The trial court found (1) that on the occasion of the telephone conversation, it was Clack's intent to reinstate the insurance coverage of his friends and clients, if he had that authority; (2) that if Clack had realized a question might be raised as to his authority to reinstate the coverage, he would have made arrangements to go at once and pick up the premium payment; and (3) that it was assumed by both parties, because of their prior custom, that the Rabuns were in fact reinstating their coverage.

On the basis of its findings, the trial court concluded that the policy was in full force and effect at the time of the accident, protecting against loss, and denied Preferred Risk its prayer for declaratory judgment. The court also awarded the Rabuns recovery of their claim for damages in the sum of $756.07.

Preferred Risk brings fifteen points of error on appeal. We will overrule all points of error and affirm judgment of the trial court.

Preferred Risk at the outset contends that the company was not bound to cover the Rabuns' loss because the mode of reinstatement was expressly limited to payment of premium. The company's position essentially is that since the policy called for the formality of payment of premium, an oral binder could not become effective to reinstate the policy.

In general, because the reinstatement provisions are dictated by the insurer, such provisions must be construed against the company and liberally interpreted in favor of the insured. Stipulations in the policy as to the mode of revival being for the benefit of the insurer, the requirements may be waived, expressly or by implication. The implied waiver often occurs when the insurer has reinstated the policy on previous occasions, without the formality required by the policy. In such instances the insurer is held to have waived strict compliance on reinstatement. 3A Appleman, *Insurance Law and Practice*, secs. 1973, 1974 (1967), and authorities cited.

Courts of this state follow the majority of jurisdictions by dealing with renewal, or reinstatement, of a lapsed policy in terms of "waiver of forfeiture." In determining whether to apply the doctrines of waiver and estoppel, with respect to renewal of an insurance policy, Texas courts generally have held that any act, declaration, or course of dealing by the insurer, with knowledge of the facts constituting a cause of forfeiture or breach of a condition in the policy, which dealings recognize and treat the policy as still in force, and leads the insured to regard himself as protected, will amount to a waiver of the forfeiture, or to a dispensation of performance of conditions of the policy. Thus the insurer will be estopped to insist upon the forfeiture, or to set up forfeiture as a defense in a suit growing out of a subsequent loss. *Cohen v. Continental Fire Ins. Co.*, 67 Tex. 325, 3 S.W. 296 (1887); *Calhoun v. The Maccabees*, 241 S.W. 101 (Tex. Comm'n App.1922, jdgmt adopted); *Bailey v. Sovereign Camp, W. O. W.*, 116 Tex. 160, 286 S.W. 456 (1926); *National Life & Accident Ins. Co. v. Harris*, 130 Tex. 168, 107 S.W.2d 361 (1937). In accord: 43 Am.Jur.2d *Insurance*, sec. 1092 (1969).

In *Bailey* the Supreme Court stated the elements which must be present to bring about waiver of a forfeiture: "First. The insurer must have knowledge of the facts constituting the forfeiture of the certificate. Second. The forfeiture must be com-

plete and absolute. Third. There must be some unequivocal act on the part of the insurer which recognizes the continuance of the policy, or which is wholly inconsistent with the forfeiture." 286 S.W. 457, col. 2.

 When such unequivocal act occurs, the other elements being present, the insurer also waives the formalities of reinstatement. The waiver of forfeiture implies a dispensation of the reinstatement conditions of the policy. In the case at hand, reinstatement being conditioned on payment of a premium, the unequivocal act of an oral binder gave rise to waiver of forfeiture and also waived the condition of reinstatement. *Bailey*, 286 S.W. 458.

The doctrine of waiver and the often associated and resultant doctrine of estoppel have been applied in the situation where an agent agreed orally to renew an insurance policy, but thereafter for some reason failed to do so. Generally the insurer has been estopped to deny renewal of a policy, or authority of the agent to make such agreement, or has been held to have waived the renewal conditions of the policy, particularly with respect to payment of the renewal premium. See 85 A.L.R.2d 1410–1440 (1962) and authorities cited. In such cases, the waiver by, or an estoppel against, an insurer arose from the act, conduct, or knowledge of a duly authorized representative, acting within the scope of actual or apparent authority.

Although the court did not expressly apply the doctrine of waiver by name, it was held in 1941 by the Waco Court of Civil Appeals that, where an insurer's authorized agent agreed orally to renew a fire insurance policy but through oversight failed to renew, the policy nevertheless was in force. *Prudential Fire Insurance Co. v. Williams*, 148 S.W.2d 264 (Tex.Civ.App. Waco 1941, writ dism'd jdgmt. cor.). In *Orient Insurance Co. v. Wingfield*, 49 Tex.Civ.App. 202, 108 S.W. 788 (Austin 1908, writ ref'd), this Court sustained validity of an oral contract and held that payment of the premium was not essential to a contract to renew and that the course of conduct between the agent and the insured may be looked to in order to determine whether payment of the premium had been waived as a condition for reinstatement of the policy.

The Supreme Court in 1887 expressly held that though the policy be forfeited by failure to pay the premiums, an agent duly authorized may waive the forfeiture by a parol contract and thereby reinstate the obligation, ". . . although it may be stipulated on the face of the instrument itself that this shall not be done." *Cohen et al. v. Continental Fire Ins. Co., supra*, 3 S.W. 297. It is apparent that Texas courts recognize that reinstatement by parol contract can constitute an "unequivocal act" giving rise to waiver of forfeiture.

In *Orient Insurance* this Court stated that ". . . in ascertaining whether the premium has been paid or *waived* the *habit and custom and course of dealing* between the assured and the agent of the company may be looked to." (Emphasis added). 108 S.W. 792, col. 1. Courts in other jurisdictions have held that the agent's previous course of dealing, under which the agent renewed the policy before payment of the requisite premium, was sufficient to justify the insured in believing that he had credit and coverage on the basis of an oral renewal agreement. *Baldwin v. Phoenix Ins. Co.*, 107 Ky. 356, 54 S.W. 13 (1899). A federal court held that exigencies of modern business require and justify reliance on oral insurance renewal agreements before a formal policy is issued. *Massachusetts Bonding & Ins. Co. v. R. E. Parsons Electric Co.*, 61 F.2d 264 (8th Cir. 1932).

 On the issue of whether Clack as agent for Preferred Risk had authority to waive forfeiture, we find it settled that he did have such authority under the facts of this case. Texas courts have held that if a local recording agent (under Article 21.14 of the Insurance Code) acts within his statutory authority to bind the company on risks, the agent may waive stipulations and conditions of the policy, and so bind his principal by the waiver. *Morrison v. Insurance Co. of North America*, 69 Tex. 353, 6 S.W. 605 (1887); *Carolina Insurance Co. v. Christo-*

*pher,* 130 Tex. 245, 106 S.W.2d 138 (1937). The rule is based on the proposition that an insurance company cannot limit its power to contract in any lawful manner through its authorized agents acting within the scope of their authority as local recording agents. *Home Ins. Co. of New York v. Roberts,* 129 Tex. 178, 100 S.W.2d 91, 93 (1937).

In the language of the Supreme Court, as found in *Cohen v. Continental Fire Ins. Co., supra,* "There can be no doubt that an insurance company, through its authorized agent, may contract by parol for the renewal of a policy, although it may be stipulated on the face of the instrument itself that this shall not be done. There is no peculiar sanctity attached to such provision in contracts of this character, which makes them an exception to the general rule that parties to an agreement may, by mutual concurrence, change its terms at any time after its execution, so as to meet their pleasure or interests." 3 S.W. 297.

Reverting to and applying the test stated in *Bailey,* the three elements required to constitute waiver of forfeiture are found in this cause: *first,* the insurance company had knowledge of the forfeiture, since it had cancelled the policy; *second,* the forfeiture was complete upon cancellation and notice to the Rabuns; and, *third,* Clack's oral assurances to the Rabuns constituted an unequivocal act which recognized continuance of the policy. Clack's act and assurances were made unambiguous and sincere by reason of the prior course of dealing under which the Rabuns in the past had been covered by oral binders. As the local recording agent, Clack had authority to bind the company by waiver of the stipulation that the insurance could be reinstated only by payment of the premium.

■ On appeal Preferred Risk meets the issue of waiver with the argument that the Rabuns, for the first time on appeal, expressly employed the term "waiver" and did not plead waiver by specific designation as required under Rule 94, Texas Rules of Civil Procedure. We overrule the contention. Under Rule 94, the defensive plea must set out every necessary element of estoppel or waiver, if such is the defense. *Crews v. Gulf Grocery Co.,* 107 Tex. 604, 182 S.W. 1096 (1916). But if the *elements* of the defense are alleged, it is not necessary to allege the legal conclusion that plaintiff is barred by "estoppel" or by "waiver." *Richards v. Frick-Reid Supply Corp.,* 160 S.W.2d 282 (Tex.Civ.App. Fort Worth 1942, writ ref'd w. o. m.). See 2 McDonald, *Texas Civil Practice,* sec. 7.38 (1970).

■ The Rabuns, in their answer to Preferred Risk's petition, alleged that (1) the agent agreed to pick up the premium at their home, (2) the premium was then "due and owing," (3) there was a complete "agreement and accord" that the policy was in effect at the date of the telephone conversation, and (4) such agreement was consistent with a prior course of dealing between the agent and the Rabuns. These allegations in effect are allegations of the three requirements of waiver of forfeiture, being knowledge of forfeiture, completeness of forfeiture, and the unequivocal act inconsistent with forfeiture.

■ Even if it be said that these allegations fall short of establishing the defense with sufficient particularity, it is clear from the evidence, the findings of fact and conclusions of law that the case was tried on a theory of waiver of forfeiture. Preferred Risk made no proper objection, and the defense of waiver was tried by express or implied consent. *Davant v. Lane,* 273 S.W.2d 897 (Tex.Civ.App. Texarkana 1954, writ ref'd n. r. e.); *Hamon v. Allen,* 457 S.W.2d 384 (Tex.Civ.App. Corpus Christi 1970, no writ). See 2 McDonald, *Texas Civil Practice,* sec. 7.38, p. 266, n. 65 (1970).

We hold that the policy had been duly reinstated and was in full force and effect at the time of the accident on July 23, 1975, and the trial court correctly denied Preferred Risk a declaratory judgment that the policy was not in effect.

Judgment of the trial court in all things is affirmed.

Affirmed.