NO. 07-04-0096-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 10, 2005

______________________________

DIANA C. AVILA, APPELLANT

v.

ALFREDO J. LOYA, INDIVIDUALLY AND D/B/A MAVERICK

INSURANCE AGENCY AND HOME STATE COUNTY MUTUAL

INSURANCE COMPANY, APPELLEES

_________________________________

FROM THE COUNTY COURT AT LAW NO. 3 OF LUBBOCK COUNTY;

NO. 2003-593,933; HON. PAULA LANEHART, PRESIDING

_______________________________

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.
(footnote: 1)
 Appellant Diana C. Avila (Avila) brings this appeal from a take-nothing summary judgment in favor of appellees Alfredo J. Loya d/b/a Maverick Insurance Agency (the Agency) and Home State County Mutual Insurance Company (Home State).  In pursuing this appeal, she presents two issues for our decision.  In those issues, she asserts the trial court erred in granting its summary judgment because 1) issues of fact exist with regard to her claim of misrepresentations made under article 21.21 § 4(a) of the Texas Insurance Code, and 2) issues of fact exist as to misrepresentations under § 17.46(b)(12) of the Texas Business and Commerce Code.

Factual Background

Avila procured an auto insurance policy from Home State acting through the Agency, covering a policy period ending September 25, 2001, unless extended by the payment of a monthly premium.  The policy contained a provision calling for the automatic termination of the policy if the insured failed to pay the continuation premium when it was due.  Although a renewal notice was sent, the continuation premium was not paid by its due date.   On September 28, 2001, Avila was involved in an automobile accident.  On that same day, Avila’s daughter tendered a payment premium check to the Agency, the local agent of Home State. The check was accepted by the Agency which gave the daughter a liability insurance card that showed the period of Avila’s coverage with the effective date as 09/28/01 and the expiration date as 10/28/01.

In her affidavit attached to her response to appellees’ summary judgment motion, Avila averred that at the time of the accident, she believed herself to be covered by her insurance policy.  She also averred that “[w]ell before the accident of Sept. 28 that I was in,” she had sent her daughter in to make the payment to renew her policy coverage.  She admitted the payment was not made until September 28, 2001.  She also admitted that “[she] did not tell [her] daughter about the auto accident before she made the payment,” and “[she] was only able to tell her about the accident I was in that night, after she had already made the payment.”  She further averred:  “After the accident, the agency took my payment premium check.  They cashed it and issued me a new card showing me to be covered again after the accident took place.”  Avila also averred that on the Monday following the wreck she called in to the Agency and was told “there was no problem with [her] insurance, that everything was being taken care of” and that she was not notified that she was not covered until October 11 or 12, 2001.  She further stated:

I had made late payments to Home State County Mutual through the Maverick Agency before.  I was about two days late on renewing my insurance twice before.  This had taken place a couple of times without my insurance coverage being canceled . . . . 

She explicated that she had never been given a refund check for “the lapse of insurance the insurance company and agency are claiming took place.”

Discussion

We first note the general rule that an insured’s failure to pay premiums when they become due causes the insurance policy to lapse and become ineffective.  
Walker v. Federal Kemper Life Assurance Co.
, 828 S.W.2d 442, 447 (Tex. App.--San Antonio 1992, writ denied).  Under this record, it is undisputed that the monthly renewal premium due on the policy here was not paid by its due date.  It is also undisputed that at the time the renewal premium was accepted by the Agency, it had no knowledge that an accident had occurred.  Disposition of the appeal, then, requires us to initially decide if the record shows there are fact questions raised as to whether, by acts or representations, appellees had waived their right to assert the insurance policy had lapsed at the time of the accident. 

The purpose of the summary judgment procedure is not to provide either a trial by deposition or a trial by affidavit.  Rather, its purpose is to provide a method of summarily terminating a case when it clearly appears only a question of law is involved and that no genuine issue of fact remains.  
Port Distributing Corp. v. Fritz Chem. Co., 
775 S.W.2d 669, 671 (Tex. App.--Dallas 1989, writ dism’d by agr.).

To prevail on summary judgment, a defendant as movant must either: 1) disprove at least one element of the plaintiff’s theory of recovery, or 2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff’s cause of action.  
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence.  
See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.
, 644 S.W.2d 443, 446 (Tex. 1982).

Thus, in a summary judgment matter, the question on appeal is whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of fact as to one or more of the essential elements of the cause of action.  
See Gibbs v. General Motors Corp.
, 450 S.W.2d 827, 828 (Tex. 1970).  When a summary judgment does not specify the grounds upon which it is based, the judgment will be affirmed if any of the grounds presented in the motion are meritorious.  
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995). 

Although not specified in its judgment, in its letter to trial counsel notifying them of its ruling, the trial court opined that it was granting the motion for summary judgment because it was undisputed that appellees did not know an accident had occurred at the time they accepted the premium payment.  Avila disputes that conclusion, but our review of the record satisfies us that the trial court was legally correct in that conclusion.

However, in Avila’s pleading, she averred that appellees breached the section of the Insurance Code then enumerated as art. 21.21, § 4(1). In pertinent part, that statute  provided that misrepresentations of the terms of any issued policy constitutes “unfair and deceptive acts or practices in the business of insurance.”  Tex. Ins. Code Ann. art. 21.21, § 4(1) (Vernon Supp. 2004-05).  She also references §17.46(b)(12) of the Business and Commerce Code (the DTPA) which, in pertinent part, states that a false, misleading, or deceptive act or practice includes “representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.”  Tex. Bus. & Com. Code Ann. § 17.46(a) & (b)(12) (Vernon Supp. 2004-05).

The question, then, first presented for our decision is whether appellees, by  accepting the post-forfeiture premium and reinstating coverage, violated either of the referenced statutes by declining coverage for a claim for indemnification of damages that occurred before the acceptance of the premium and the reinstatement of the policy.  In that connection, evidence that establishes only a bona fide coverage dispute does not demonstrate bad faith.  
State Farm Fire & Cas. Co. v. Simmons
, 963 S.W.2d 42, 44 (Tex. 1998); 
Transportation Ins. Co. v. Moriel
, 879 S.W.2d 10, 17 (Tex. 1994).  Plainly put, if an insurer has a reasonable basis for a denial of coverage, it retains the right to deny questionable claims without being exposed to extra-contractual tort claims which require the same predicate for recovery as bad faith claims.   
Emmert v. Progressive County Mut. Ins. Co., 
882 S.W.2d 32, 35 (Tex. App.--Tyler 1994, writ denied).
  Thus, an insurer who establishes a reasonable basis for denying a claim, even if that basis is shown to be erroneous, enjoys immunity from statutory bad faith under the Texas Insurance Code and the DTPA.  
MacIntire v. Armed Forces Benefit Ass’n
, 27 S.W.3d 85, 92 (Tex. App.–San Antonio 2000, no pet.). 

Although Avila strenuously contends that appellees’ acts and previous conduct make it inapplicable in this instance, she does not dispute the general rule that a failure to pay an insurance policy’s renewal premium by its due date forfeits its coverage.  Even so, she argues, in this case there are material facts that demonstrate coverage predicated on a) Maverick’s waiver by a course of dealing or b) the misrepresentation of an agent. In arguing that the Agency waived the forfeiture, Avila places primary reliance upon the doctrine explicated in 
Equitable Life Assurance Society v. Ellis
, 105 Tex. 526, 147 S.W. 1152 (1912) that acts of an insurer may result in its waiver of a forfeiture for non-payment of premiums if those acts consist of “negotiations or transactions with the insured, after 
knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy or does acts based thereon.”  
Id. 
at 1156.  

As evidence sufficient to raise a fact question in that regard, Avila contends that the Agency waived the forfeiture provision by accepting a check and issuing a certificate of insurance soon after the accident and she has never been given a refund of the premium she paid.  Waiver occurs when a party either intentionally relinquishes a known right or engages in intentional conduct inconsistent with claiming that right.  
Zipp Indus., Inc. v. Ranger Ins. Co., 
39 S.W.3d 658, 664 (Tex. App.--Amarillo 2001, no pet.) (citing 
In re Epic Holdings, Inc.
, 985 S.W.2d 41, 57 (Tex.1998)).
 
 

With regard to Avila’s course of dealing theory, her pertinent averments were:

I had made late payments to Home State County Mutual through the Maverick Agency before.  I was about two days late in renewing my insurance twice before.  This had taken place a couple of times without my insurance coverage being cancelled.  Once before, for example, I was unable to make it in to the local agency office and pay on a Saturday, and they told me I could pay on Monday without my insurance being cancelled.

In 
Southern Farm Bureau Casualty Ins. Co. v. Davis
, 503 S.W.2d 373, 377 (Tex. Civ. App. --Amarillo 1973, writ ref’d n.r.e.), this court explicated that a custom or usage with respect to the acceptance of late payments of insurance premiums only exists when that has occurred over a substantial period of time.  Accepting Avila’s averments at their face value, they fall far short of showing an acceptance of late payments over a substantial period of time and thus are not sufficient to raise a fact question about a waiver of appellees’ right to assert the forfeiture of coverage of the accident in question.  Moreover, in 
National Life & Acc. Ins. Co. v. Reams
, 197 S.W. 332, 335-36 (Tex. Civ. App.--Amarillo 1917, no writ), this court held that a previous history of accepting late payments was not sufficient to show a waiver by a course of dealing because the insurer had never accepted a late payment after an accident.  Additionally, the fact that no refund of the late premium payment has been made is not sufficient to show a fact question because the record shows it was accepted without knowledge of the accident, as well as the undisputed fact that the insurance certificate showed that it covered a one-month prospective period.

In asserting that the record is sufficient to raise a fact question as to waiver, Avila  cites and primarily relies upon 
Preferred Risk Mutual Ins. Co. v. Rabun, 
561 S.W.2d 239 (Tex. Civ. App.--Austin 1978, writ dism’d 
w.o.j).  
Rabun
 concerned the reinstatement of a lapsed policy.  In that case, the evidence showed that the post-forfeiture reinstatement of the insurance policy occurred before the insured suffered a loss.  In
 Rabun, 
the insurer’s recording agent had reinstated the policy before the loss by giving the insured an oral binder consistent with a course of prior dealing before the insured’s loss.  The oral binder provided the basis for the court’s holding that the policy was in effect at the time of the insured’s loss.  
Id. 
at 244.  The instant case concerns the effect of the insurer’s acceptance of a premium tendered after both the forfeiture and the loss, which is a question quite different from that before the 
Rabun 
court
.

In the hoary
 
case of 
Alliance Ins. Co. v. Continental Gin Co.
, 285 S.W. 257, 258 (Tex. Comm’n App. 1926, judgm’t adopted), the court espoused as a matter of public policy that the acceptance of an insurance premium without knowledge of a loss that had occurred prior to the receipt of a premium would not result in the insurer’s liability.  
See
 
also Mallard v. Hardware Indem. Ins. Co.
, 216 S.W.2d 263, 265-66 (Tex. Civ. App.--San Antonio 1948, no writ).  Indeed, in 
Southern Farm Bureau Casualty Ins. Co. v. Davis, 
503 S.W.2d at 377
, 
this court opined, with approval, that “it has been held that when an insurance company proposes to renew a policy upon payment of a premium, and the insured retains the policy and does not respond to the proposal until after a loss, there is no completed contract of insurance.”  
See also Scottsdale Ins. Co. v. Travis
, 68 S.W.3d 72, 75 (Tex. App.--Dallas 2001, pet. denied) (noting fortuity doctrine precludes coverage for both a “known loss” or a “loss in progress”); 
Hudgens v. Texas Casualty Ins. Co., 
491 S.W.2d 230, 232 (Tex. Civ. App.--Amarillo 1972, writ dism’d)
 
(no recovery permissible on antedated policy procured without disclosing a known loss).

Avila also argues that fact questions exist concerning whether post-loss misrepresentations made to her by an Agency employee gave rise to appellees’ liability under § 17.46(b)(12) of the Business and Commerce Code. Again in pertinent part, that statute provides that representation “that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law” are included in the term “false, misleading, or deceptive acts or practices” as used in the DTPA.  Tex. Bus. & Com. Code Ann. § 17.46(b)(12) (Vernon Supp. 2004-2005).  The statements giving rise to this argument were statements assertedly made by an employee of the Agency named “Magdalena” or “Maggy” in a telephone conversation with Avila to the effect that “there was no problem with my insurance, that everything was being taken care of.”  However, even assuming 
arguendo
, that those statements could be considered as a misrepresentation, Texas courts have held that post-loss misrepresentations are not misrepresentations of the type that give rise to DTPA § 17.46 actions.  
Royal Globe Ins. Co. v. Bar Consultants, Inc.
, 577 S.W.2d 688, 694-95 (Tex. 1979); 
Provident Am. Ins. Co. v. Castaneda
, 988 S.W.2d 189, 200 n.55 (Tex. 1990), 
overruled on other grounds by Crown Life Ins. Co. v. Casteel, 
22 S.W.3d 378 (Tex. 2000) (citing 
Royal Globe
 as distinguishing pre-loss representations which are actionable from post-loss representations which are not actionable).

Although Avila cites and relies upon 
Mendoza v. American Nat’l Ins. Co., 
932 S.W.2d 605 (Tex. App.--San Antonio 1996, no writ)
 
and
 Stumph v. Dallas Fire Ins. Co.,
 34 S.W.3d 722 (Tex. App.--Austin 2000, no pet.), those cases are distinguishable.  In 
Mendoza,
 the representations occurred after both the loss and the purchase of prospective coverage.  That is not the case before us.  
Stumph v. Dallas Fire Ins. Co. 
concerned pre-renewal representations, which is also not the case before us as it concerns post-loss representations as well as the purchase of prospective coverage.

In final summary, both of Avila’s issues are overruled, and the judgment of the trial court is affirmed.

John T. Boyd

Senior Justice

        

 

FOOTNOTES
1:
John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.  Tex. Gov’t Code Ann. §75.002(a)(1) (Vernon Supp. 2004).